The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Ronald Charles LEDMAN, Defendant-Appellant.

No. 79SA574.

Supreme Court of Colorado, En Banc.

Jan. 12, 1981.
Rehearing Denied Feb. 17, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Robert Breindel, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

Ronald Charles Ledman (defendant) appeals his conviction for attempt to commit aggravated robbery. He asserts that his conviction was obtained in violation of due process of law because of the statutory scheme restricting the defense of impaired mental condition to that form of attempted aggravated robbery requiring a specific intent. He also claims that he was deprived of his right to a unanimous jury verdict due to a jury instruction defining the alternative ways to commit attempted aggravated robbery and a general guilty verdict for that offense. We affirm the conviction.

The defendant was charged with attempt to commit aggravated robbery.[1] The information alleged that during the offense the defendant was armed with a deadly weapon, a knife, and that either he had the intent, if resisted, to kill, maim or wound the person robbed or any other person,[2] or by the use of force, threats, or intimidation with the deadly weapon, he knowingly put the person robbed or any other person in reasonable fear of death or bodily injury.[3] The charge arose out of the defendant's attempt to take money at knife point from a bartender at Roger's Frontier Bar in Colorado Springs.

The evidence established that the defendant had been drinking at the bar during the afternoon hours on the day of the offense. At approximately 1:00 p. m. he asked a bartender how much money was in the cash register. Believing that the defendant wanted to cash a check, the bartender told him there was about forty dollars in the register. The defendant stated, "It's not worth it." Later that evening the defendant asked another bartender the same question. When this bartender responded that he didn't know, the defendant brandished a knife and demanded the money. The bartender, although afraid, managed to subdue him and, with the assistance of others, held him for the police.

During trial the defendant called a psychiatrist in order to establish that he lacked the requisite culpability for the offense. This psychiatrist testified that the defendant displayed some evidence of schizophrenia and this condition, coupled with alcoholism, rendered it difficult for him to appreciate many aspects of his conduct on the date of the offense.[4] However, the psychiatrist

---

1. Sections 18–2–101 and 18–4–302, C.R.S. 1973 (1978 Repl. Vol. 8).

2. Section 18–4–302(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

3. Section 18–4–302(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8).

4. Although there was evidence that the defendant had been drinking prior to the offense and had a history of alcoholism, he did not rely on self-induced intoxication as an affirmative defense and the jury was not instructed on that issue. See section 18–1–804, C.R.S. 1973 (1978 Repl. Vol. 8).

opined that the defendant knew what he was doing and intended to take money from the bartender. In rebuttal, the prosecution called a psychiatrist and elicited testimony that on the date of the offense the defendant was suffering from severe alcoholism but not schizophrenia. This psychiatrist offered the opinion that the defendant acted knowingly during the robbery and was capable of forming specific intent to kill, maim or wound the person robbed.

The court's instructions defined both specific intent and knowing conduct and advised the jury that the culpability required for attempt to commit aggravated robbery as charged is either: (1) the specific intent, if resisted, to kill, maim or wound the person robbed or any other person; or (2) knowingly putting the person robbed or any other person in reasonable fear of death or bodily injury by the use of force, threats or intimidation with the deadly weapon. The court further instructed the jury that an impaired mental condition is an affirmative defense to that form of attempted aggravated robbery requiring a specific intent to kill, maim or wound, but that such defense is not applicable to that form of aggravated robbery requiring knowing conduct. Additionally, the jury was instructed that "[i]n your determination of whether the People have proven beyond a reasonable doubt that the Defendant acted 'knowingly', you may consider all of the evidence offered in this matter, including evidence of his mental condition." [5]

The court submitted general verdicts of not guilty and guilty on the charge of attempt to commit aggravated robbery and instructed the jury that any verdict must be unanimous. The defendant made no objection to the forms of verdict or to the court's instruction on unanimity. Nor did the defendant tender an instruction on unanimity or alternative verdict forms in lieu of those submitted by the court to the jury. Subsequent to the jury's verdict of guilty, the court denied the defendant's motion for a new trial and imposed a sentence for an indeterminate term not to exceed 40 months.

Before addressing the issues here presented it is appropriate to summarize the culpability requirements for attempt to

5. The instruction in its entirety is as follows:

"A person commits the crime of Attempted Aggravated Robbery if:

"He engaged in conduct constituting a substantial step toward the commission of Aggravated Robbery as defined elsewhere in these Instructions and he has the required culpability of acting either with specific intent or knowingly, as set forth in Paragraphs 4(a) and 4(b) of Instruction No. 5, one of which is necessary in order to be convicted of Aggravated Robbery.

"The elements of Attempted Aggravated Robbery are therefore:
(1) Engaging in conduct constituting a substantial step toward the commission of Aggravated Robbery, and
(2) Having the required culpability of acting either with specific intent or knowingly as aforesaid which is necessary in order to be convicted of Aggravated Robbery.

"If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the Defendant, RONALD CHARLES LEDMAN, without affirmative defense, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the Information, you should find the Defendant guilty of Attempted Aggravated Robbery; if you do not so find, you should find the Defendant not guilty of Attempted Aggravated Robbery.

"In regard to the affirmative defense mentioned above, the evidence has raised the issue of impaired mental condition; that is, he was not capable of committing the offense charged in the manner provided by Paragraph 4(a) of Instruction No. 5, to-wit, with specific intent. The prosecution, therefore, has the burden of proving to your satisfaction beyond a reasonable doubt the guilt of this Defendant as to that issue as well as to all of the elements of the crime charged. If, after consideration of the evidence concerning the affirmative defense, along with all the other evidence, you are not convinced beyond a reasonable doubt that he possessed the specific intent at the time in question, then you should find him not guilty of committing the offense in the manner provided by Paragraph 4(a).

"Impaired mental condition, however, is not a defense to whether or not he acted 'knowingly' as provided by Paragraph 4(b) aforesaid. In your determination of whether the People have proved beyond a reasonable doubt that the Defendant acted 'knowingly', you may consider all of the evidence offered in this matter, including evidence of his mental condition."

commit aggravated robbery and the affirmative defense of impaired mental condition. We then will consider separately the defendant's constitutional challenge to the restrictions on impaired mental condition as an affirmative defense and his unanimity argument on the jury verdict.

## I.

■ Criminal attempt to commit aggravated robbery requires that the offender act with the kind of culpability otherwise required for aggravated robbery and engage in a substantial step toward the commission of aggravated robbery. Section 18–2–101(1), C.R.S. 1973 (1978 Repl. Vol. 8). Under the pertinent provisions of section 18–4–302(1), C.R.S. 1973 (1978 Repl. Vol. 8), a person has the requisite culpability for aggravated robbery when:

"(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or

"(b) He ... by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury ..."

Specific intent means that the actor's "conscious objective is to cause the specific result proscribed by the statute defining the offense." Section 18–1–501(5), C.R.S. 1973 (1978 Repl. Vol. 8). In contrast to specific intent, section 18–1–501(6), C.R.S. 1973 (1978 Repl. Vol. 8), defines knowingly as follows:

"A person acts 'knowingly' ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

Offenses requiring knowledge as the culpable mental state are not specific intent crimes. Section 18–1–501(6), C.R.S. 1973 (1978 Repl. Vol. 8); *People v. Del Guidice*, Colo., 606 P.2d 840 (1979); *People v. Mingo*, 196 Colo. 315, 584 P.2d 632 (1978).

Section 18–1–803, C.R.S. 1973 (1978 Repl. Vol. 8), addresses the issue of criminal responsibility for specific intent offenses when the offender suffers from an impaired mental condition:

"Evidence of an impaired mental condition though not legal insanity may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent if such an intent is an element of the offense charged."

The issue of responsibility due to an impaired mental condition is an affirmative defense. Section 18–1–805, C.R.S. 1973 (1978 Repl. Vol. 8). Unless the prosecution's evidence raises the issue involving the defendant's impaired mental condition, the defendant must present some credible evidence to raise it. Section 18–1–407(1), C.R.S. 1973 (1978 Repl. Vol. 8). Once the issue is raised, the prosecution must prove beyond a reasonable doubt the guilt of the defendant as to that issue—the defendant's capacity to form the requisite specific intent—as well as all other elements of the offense. Section 18–1–407(2), C.R.S. 1973 (1978 Repl. Vol. 8).

## II.

The defendant raises a two-pronged argument against the validity of his conviction. Reduced to plain terms his claim is that his conviction was obtained in violation of due process of law because: (1) the statutory scheme and the jury instructions based thereon relieved the prosecution of establishing beyond a reasonable doubt the culpability requirement of knowledge; and (2) the same statutory scheme and jury instructions prevented him from contesting during trial this essential element of the crime charged. We are not persuaded by his claim.

## A.

■ The defendant argues that section 18–1–803, C.R.S. 1973 (1978 Repl. Vol. 8), which limits the affirmative defense of impaired mental condition to specific intent offenses, creates a conclusive presumption

of culpability for non-specific intent crimes, such as those involving knowing conduct, and thereby relieves the prosecution of its burden of proving beyond a reasonable doubt the accused's culpability for these non-specific-intent offenses. This argument is untenable.

■ Admittedly, due process of law requires the prosecution to establish all essential elements of a crime beyond a reasonable doubt. *E. g., In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *People v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968); section 18–1–402, C.R.S. 1973 (1978 Repl. Vol. 8). This constitutional mandate, however, does not impair the legislature's competence to establish the statutory constituents of criminal culpability for various offenses and to formulate particular rules of justification or excuse for acts that otherwise might be criminally punishable. The United States Supreme Court in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), considered in a due process context a state statutory scheme that imposed on a defendant the burden of establishing by a preponderance of evidence the affirmative defense of extreme emotional disturbance in order to reduce a criminal homicide to manslaughter. The Court initially remarked that the legislature's decision in such matters "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" 432 U.S. at 202, 97 S.Ct. at 2322, 53 L.Ed.2d at 287, and then proceeded to uphold the statutory scheme:

"Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the non-existence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here." 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292.

■ Whereas the legislature in the first instance may limit the range of criminal responsibility by establishing affirmative defenses to crimes, it also may limit those affirmative defenses to a particular category of crimes without offending due process. Due process requires only that the limitation not impair basic rights of the criminally accused. *Patterson v. New York, supra*. The limitation of the affirmative defense of impaired mental condition to specific intent crimes is a reasonable exercise of legislative power.

■ Such limitation conforms to the law in this jurisdiction antedating the enactment of the Colorado Criminal Code in 1971. *See, e. g., Watkins v. People*, 158 Colo. 485, 408 P.2d 425 (1965). Moreover, the present statutory scheme governing this defense is more favorably disposed to the accused than was the common law. At common law the burden of proving all affirmative defenses rested on the defendant. *See, e. g., Patterson v. New York*, 432 U.S. at 202, 97 S.Ct. at 2323, 53 L.Ed.2d at 287; *Mullaney v. Wilbur*, 421 U.S. 684, 693–94, 95 S.Ct. 1881, 1887, 44 L.Ed.2d 508, 516 (1975); Fletcher, *Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices In Criminal Cases*, 77 Yale L.J. 880, 889–910 (1968). Under the Colorado Criminal Code once some evidence from either the prosecution or the defense raises the issue of impaired mental condition, the burden devolves upon the prosecution to establish beyond a reasonable doubt the defendant's capacity to form the specific intent required for the offense as well as the defendant's guilt as to all essential elements of the crime charged against him. Section 18–1–407(2), C.R.S. 1973 (1978 Repl. Vol. 8). The statutory scheme does not create any presumption of culpability, conclusive or otherwise. No such presumption was invoked by

the prosecution and none was involved in the jury's resolution of this matter. Contrary to the defendant's assertion, we do not interpret the statutory scheme or the jury instructions based thereon as relieving the prosecution of its constitutional burden to prove beyond a reasonable doubt the culpability requirements for both forms of attempt to commit aggravated robbery.

## B.

Similarly, we reject the defendant's argument that the statutory scheme and jury instructions operated to deny him the right to contest during the trial the culpability requirement of knowledge. The defendant hinges the statutory aspect of his argument on his assertion that the statutory limitation of the defense of impaired mental condition to specific intent crimes creates a conclusive presumption that he acted knowingly. We previously have rejected his proposed statutory interpretation in our disposition of the first prong of his due process claim.

■ The defendant supplements his statutory argument by pointing to a statement in one of the instructions that "[i]mpaired mental condition ... is not a defense to whether he acted 'knowingly' ...." This statement, however, must be read in conjunction with other parts of the instruction in determining its significance to the defendant's claim here. *E. g., People v. More-*

land, 193 Colo. 237, 567 P.2d 355 (1977); *People v. Manier*, 184 Colo. 44, 518 P.2d 811 (1974). This same instruction informed the jury that impaired mental condition is an affirmative defense to that form of attempted aggravated robbery requiring the specific intent to kill, maim or wound. Since impaired mental condition is an affirmative defense, section 18–1–805, C.R.S. 1973 (1978 Repl. Vol. 8), and since evidence of that condition may be offered on the issue of the accused's capacity to form the requisite specific intent, section 18–1–803, C.R.S. 1973 (1978 Repl. Vol. 8), the challenged statement in the instruction expresses a correct principle of statutory law.

■ More importantly, however, the court in the very same instruction informed the jury as follows: "In your determination of whether the People have proved beyond a reasonable doubt that the defendant acted 'knowingly', you may consider all of the evidence offered in this matter, including evidence of his mental condition." This instruction was accompanied by a full complement of instructions on the presumption of innocence, the burden of proof, the elements of the offense, and other matters pertinent to the jury's resolution of the case. Under these circumstances the defendant's argument that he was unconstitutionally denied the right to contest the culpability element of acting knowingly is clearly without merit.[6]

---

**6.** In *People v. Del Guidice*, Colo., 606 P.2d 840 (1979), we held that the affirmative defense of voluntary or self-induced intoxication is not applicable to second-degree murder, which requires the culpability of knowledge, and evidence of such condition is not admissible to negate the culpability requirement for that offense. We there stated:

"The Colorado common law and statutory rule which makes evidence of voluntary intoxication incompetent to disprove general intent when that mental state is an element of a criminal charge is supported by weighty policy choices about the extent to which drunkenness can excuse criminal responsibility. The rule is one of long standing and, in our opinion, represents the judgment of the people of this state, speaking through their legislature, as to the extent to which voluntary intoxication may be a defense in homicide cases. This is clearly within the compe-

tence of the legislature. The principle established in *In re Winship, supra*, cannot be syllogistically applied in a manner which abrogates the policy choices inherent in the rule. We therefore hold that the trial court did not err in instructing the jury that it could consider evidence of the defendant's voluntary intoxication only on the charge of first-degree murder." 606 P.2d at 844.

Self-induced intoxication is caused by the ingestion of substances which a person knows or ought to know have the tendency to cause intoxication. Section 18–1–804(5), C.R.S. 1973 (1978 Repl. Vol. 8). Impaired mental condition refers generally to a diseased or defective state of mind short of legal insanity which, in many instances, derives from involuntary behavior and unconscious processes. Whether the same considerations that justify the exclusion of evidence on self-induced intoxication in "general intent" or "knowing" crimes are applicable in

### III.

The defendant claims that he was denied his right to a unanimous jury verdict. His argument commences with the proposition that the culpability requirements for the crime of attempt to commit aggravated robbery are alternative and mutually exclusive. Next, he points to the trial court's instructions on the alternative culpability elements of specific intent and knowledge, and its submission and acceptance of a general verdict of guilty. He then concludes that unanimity was violated. We do not agree.

 Contrary to the defendant's assertion, the culpability requirements for attempted aggravated robbery, as charged in this case, are alternative but not mutually exclusive, and the jury instructions did not characterize them as mutually exclusive. An offender may have a conscious objective to kill, maim or wound the person robbed or any other person, section 18–4–302(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), and concomitantly be aware that he is putting the person robbed or any other person in reasonable fear of death or bodily injury, section 18–4–302(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8).

 Section 16–10–108, C.R.S. 1973 (1978 Repl. Vol. 8), provides that "[t]he verdict of the jury shall be unanimous." *See* Crim.P. 23(a)(8) and 31(a)(3). Here the jury was instructed that any verdict must be unanimous. The instructions set out the two alternative ways the crime charged may be committed, one requiring specific intent and the other knowing conduct.[7] Evidence establishing any one alternative will support a general verdict. *People v. Taggart,* Colo., 621 P.2d 1375 (1981); *Claxton v. People,* 164 Colo. 283, 434 P.2d 407 (1967); *Hernandez v. People,* 156 Colo. 23,

396 P.2d 952 (1964). There was sufficient evidence from which the jury reasonably could infer either culpability requirement in this case.

 Furthermore, the defendant made no objection to the instruction on unanimity or to the general verdict, failed to tender any alternative instruction on unanimity or a special form of verdict, and did not raise in his motion for a new trial any issue on unanimity. In *People v. Taggart, supra,* we recently addressed this issue on a record similar to that here. *Taggart* held that under such circumstances a general instruction on the necessity of unanimity is sufficient. *See also United States v. Pavloski,* 574 F.2d 933 (7th Cir. 1978); *People v. Bennett,* 60 Cal.App.3d 112, 131 Cal.Rptr. 305 (1976); *Blake v. State,* 239 Ga. 292, 236 S.E.2d 637 (1977), *cert. denied,* 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977); *Wells v. Commonwealth,* Ky., 561 S.W.2d 85 (1978); *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989 (1903); *State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976); *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979); *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Accordingly, we conclude that the defendant was not denied his right to a unanimous jury verdict.

The judgment is affirmed.

---

like manner to exclude evidence of impaired mental condition is a question we need not decide at this time. In this case the court did allow evidence of impaired mental condition on the defendant's capacity to act knowingly and so instructed the jury.

**7.** It was at the defendant's insistence that the court instructed the jury on the alternative cul-

pability requirements for attempted aggravated robbery. At the conclusion of the evidence the prosecution moved to strike the allegation of specific intent from the information and proceed only on that form of the offense requiring knowing conduct. The defendant objected and the trial court submitted an instruction on both forms of the offense.