The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Leroy Joe GALLEGOS,
Defendant-Appellee.

No. 79SA549.

Supreme Court of Colorado.

April 20, 1981.

Rehearing Denied June 8, 1981.

G. F. Sandstrom, Dist. Atty., Matthew Martin, Michael Kupecz, Deputy Dist. Attys., Pueblo, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, James England, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Justice.

The People appeal from an order of the district court vacating a jury verdict of guilty to second degree murder[1] and dismissing that charge against the defendant for the reason that section 18–3–103(2), C.R.S.1973 (1978 Repl. Vol. 8), which states that diminished responsibility due to the lack of mental capacity is not a defense to murder in the second degree, violates due process of law. We reverse and remand for further proceedings.

The defendant, Leroy Joe Gallegos, was charged with murder in the first degree after deliberation.[2] The charge arose out of the shooting death of the defendant's wife on December 19, 1977. The prosecution's evidence established that the defendant and his wife were living apart and on the night of the homicide he visited her about a possible reconciliation. After a prolonged argument during which she accused him of incompetence and sexual inadequacy he shot her five times with a pistol.

The defense presented opinion evidence from two psychiatrists and a psychologist that the defendant was afflicted with minimal brain dysfunction and an associated explosive personality disorder with paranoid features. Minimal brain dysfunction was described as a biochemical imbalance in the brain that prevents a person from maintaining control over his bodily functions and emotional impulses, especially in situations of stress. The expert witnesses expressed the opinion that the defendant's condition rendered him incapable of forming the specific intent to kill at the time of the shooting of his wife. The defendant offered no testimony specifically addressing his capacity to act "knowingly" at the time of the homicide, although some of the expert testimony described the shooting as beyond the defendant's control. The trial court submitted the case to the jury on the charge of first degree murder after deliberation and on the lesser offenses of murder in the second degree and manslaughter upon sudden heat of passion.[3] The jury was instructed that the requisite culpability for first degree murder and manslaughter was the specific intent to cause the death of another,[4] and that the culpable mental state for second degree murder was knowingly causing the death of another. The instructions on the affirmative defense of impaired mental condition were as follows:

### Instruction No. 13

"The evidence presented in this case has raised the issue of the affirmative defense of impaired mental condition. The prosecution, therefore, has the bur-

---

1. Section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8).

2. Section 18–3–102(1)(a), C.R.S.1973 (1978 Repl. Vol. 8).

3. Section 18–3–104(1)(c), C.R.S.1973 (1978 Repl. Vol. 8).

4. The culpable mental state for manslaughter now is "knowingly", rather than "intentionally". Section 18–3–104(1)(c), C.R.S.1973 (1980 Supp.).

den of proving to your satisfaction beyond a reasonable doubt the guilt of the defendant as to that issue as well as all of the elements of the crime charged. If, after consideration of the evidence concerning the affirmative defense, along with all the other evidence, you are not convinced beyond a reasonable doubt of the guilt of the defendant then you must return a verdict of not guilty."

### Instruction No. 14

"It is an affirmative defense to the crime of murder in the first degree and manslaughter that the defendant, due to an impaired mental condition, did not have the capacity to form the specific intent required by the offense."

The defendant tendered an instruction that purported to extend the affirmative defense of impaired mental condition to the issue of the defendant's capacity to form "the specific intent" required for second degree murder. Second degree murder not being a specific intent offense,[5] the trial court refused the tendered instruction.

The jury returned a verdict of guilty to murder in the second degree. Thereafter the defendant filed a motion for a new trial. The motion did not raise any constitutional claim with respect to section 18–3–103(2), C.R.S.1973 (1978 Repl. Vol. 8), or its application to the defendant during the trial. Approximately one month after filing the motion for a new trial the defendant filed a motion to set aside the jury verdict

and to dismiss the lesser offense of second degree murder, challenging for the first time on due process grounds the constitutionality of section 18–3–103(2).[6] The trial court agreed with the defendant's due process argument, set aside the jury verdict, dismissed the lesser offense of second degree murder from the case, and granted a new trial.[7] The court determined that section 18–3–103(2) unconstitutionally prohibited the defendant from contesting the culpability element of "knowingly" for second degree murder, thereby lessening the prosecution's burden of proving the defendant's guilt for that offense beyond a reasonable doubt.

We conclude that the record here fails to establish the application of section 18–3–103(2) in a manner that injuriously affected the defendant's right to contest the requisite culpability for murder in the second degree. For this reason we reverse the trial court's determination that section 18–3–103(2) was unconstitutionally applied to the defendant, and, further, we vacate the order for a new trial and reinstate the jury verdict.

### I.

Under the Colorado Criminal Code issues relating to lack of responsibility are affirmative defenses.[8] One may be relieved of criminal responsibility on grounds of insufficient age,[9] insanity,[10] impaired mental condition,[11] or intoxication.[12] While lack of responsibility due to insanity must be raised

---

5. Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8), provides that all offenses in which the culpability required is expressed as "knowingly" are general intent crimes. The culpable mental state for second degree murder is "knowingly". Section 18–3–103(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

6. The defendant's motion to dismiss also included an equal protection argument based on a claimed arbitrary classification, in that the affirmative defense of impaired mental condition was applicable to the lesser offense of manslaughter, which then was a "specific intent" crime, section 18–3–104, C.R.S.1973 (1978 Repl. Vol. 8), but was not applicable to second degree murder, a "general intent" crime.

7. We stayed all proceedings in the trial court until final disposition of this appeal.

8. Section 18–1–805, C.R.S.1973 (1978 Repl. Vol. 8).

9. Section 18–1–801, C.R.S.1973 (1978 Repl. Vol. 8).

10. Section 18–1–802, C.R.S.1973 (1978 Repl. Vol. 8).

11. Section 18–1–803, C.R.S.1973 (1978 Repl. Vol. 8).

12. Section 18–1–804, C.R.S.1973 (1978 Repl. Vol. 8).

by special plea and separate trial on that issue,[13] the other forms of incapacity relating to criminal responsibility may be placed in issue as affirmative defenses during the trial on the merits. An affirmative defense is placed in issue either by the prosecution's evidence or by some credible evidence presented by the defendant.[14]

The statutory categorization of a matter as an affirmative defense has consequences for the prosecution's burden of proof. Under the Colorado Criminal Code once the issue of an affirmative defense is raised, the prosecution must prove the guilt of the defendant beyond a reasonable doubt as to that issue as well as all other elements of the offense.[15]

■■ Second degree murder is defined as causing "the death of a person knowingly." [16] By statute, offenses with the culpability requirement of "knowingly" are deemed to be general, rather than specific, intent crimes.[17] Section 18–3–103(2), C.R.S. 1973 (1978 Repl. Vol. 8), states that "[d]iminished responsibility due to lack of mental capacity ... is not a defense to murder in the second degree." A diminished responsibility attributable to a lack of mental capacity is the statutory equivalent of the affirmative defense of impaired mental condition in section 18–1–803, C.R.S.1973 (1978 Repl. Vol. 8), which provides:

"Evidence of an impaired mental condition though not legal insanity may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent if such an intent is an element of the offense charged."

Thus, section 18–3–103(2) merely makes explicit with respect to second degree murder what already is implicit in section 18–1–803:

the affirmative defense of diminished responsibility due to impaired mental condition is not an affirmative defense to the general intent crime of second degree murder.

■ This statutory elimination of the affirmative defense of impaired mental condition in prosecutions for general intent crimes does not erode the constitutional requirement of proof beyond a reasonable doubt. Recently, in *People v. Ledman*, Colo., 622 P.2d 534 (1981), we held that section 18–1–803 neither creates a presumption of culpability for general intent crimes, nor derogates an accused's due process right to prosecutorial proof of guilt beyond a reasonable doubt. By a parity of reasoning, it follows that section 18–3–103(2) does not lessen the prosecution's constitutional burden to prove the requisite culpability of "knowingly" for a second degree murder. However, an issue distinct from that relating to the constitutional burden of proof is whether the statutory scheme prohibits an accused from offering evidence of mental impairment in order to contest the culpability element of "knowingly" in prosecutions for general intent crimes, such as second degree murder.

In *People v. Del Guidice*, Colo., 606 P.2d 840 (1979), we construed section 18–3–103(2) to prohibit the admission of evidence of voluntary intoxication to contest the general intent required for second degree murder. This rule of evidential exclusion found support in "weighty policy choices about the extent to which [voluntary] drunkenness can excuse criminal responsibility." *Id.*, 606 P.2d at 844. In *People v. Ledman, supra,* we deferred ruling on whether *Del Guidice's* evidential prohibition

**13.** Section 18–1–802, C.R.S.1973 (1978 Repl. Vol. 8).

**14.** Section 18–1–407(1), C.R.S.1973 (1978 Repl. Vol. 8).

**15.** Section 18–1–407(2), C.R.S.1973 (1978 Repl. Vol. 8). The common law placed the burden of proving an affirmative defense on the defendant. *See, e. g., Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 2323, 53 L.Ed.2d 281, 287 (1977); *Mullaney v. Wilbur*, 421 U.S.

684, 693–94, 95 S.Ct. 1881, 1887, 44 L.Ed.2d 508, 516 (1975); *Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden of Persuasion Practices in Criminal Cases*, 77 *Yale L.J.* 880, 889–910 (1968).

**16.** Section 18–3–103(1)(a), C.R.S.1973 (1978 Repl. Vol. 8).

**17.** Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8).

extends to evidence of a mental impairment offered by a defendant to negate general intent or to create a reasonable doubt with respect thereto. *Ledman* posited an arguable distinction, for purposes of admissibility, between defense evidence of voluntary intoxication and evidence of a mental impairment:

"Self-induced intoxication is caused by the ingestion of substances which a person knows or ought to know have the tendency to cause intoxication. Section 18–1–804(5), C.R.S.1973 (1978 Repl. Vol. 8). Impaired mental condition refers generally to a diseased or defective state of mind short of legal insanity which, in many instances, derives from involuntary behavior and unconscious processes. Whether the same considerations that justify the exclusion of evidence on self-induced intoxication in 'general intent' or 'knowing' crimes are applicable in like manner to exclude evidence of impaired mental condition is a question we need not decide at this time. In this case the court did allow evidence of impaired mental condition on the defendant's capacity to act knowingly and so instructed the jury." Colo., n.6, 622 P.2d at 540–41, n.6.

Thus, although sections 18–1–803 and 18–3–103(2) combine to eliminate the affirmative defense of impaired mental condition from general intent crimes, such as second degree murder, these sections do not explicitly answer the question unresolved by *Del Guidice*—whether an accused may offer evidence of an impaired mental condition, amounting neither to voluntary intoxication nor legal insanity, for the purpose of controverting the general intent essential to second degree murder. That question arises in this case not in an abstract form but rather in the context of a trial record replete with psychiatric evidence of the defendant's mental status at the time of the offense. Under such circumstances the proper inquiry is whether section 18–3–103(2) was applied against the defendant in a manner that unconstitutionally impaired his right to present a defense to the charge of second degree murder. This issue can only be resolved by measuring the claimed impairment against the trial record. It is that issue we now address.

## II.

■ The record before us establishes that the defendant's psychiatric and psychological experts testified without restriction to the defendant's mental status. Each witness expressed the opinion that at the time of the shooting the defendant was incapable not only of forming an intent to kill but also of exercising any control over his actions. One psychiatrist described the shooting as "an act based on a chemical brain disorder" rather than "a wilful, voluntary act." When this opinion evidence was admitted, the trial court did not caution the jury to consider it in relation to the specific intent crimes of first degree murder and manslaughter only. One must conclude, therefore, that it was admitted and considered as to all offenses, including second degree murder.

The defendant made no claim during the trial that section 18–3–103(2) impaired him in defending against second degree murder. No offer of proof on the narrow issue of his mental incapacity to act knowingly was ever made. Had the defendant made such an offer and had the court rejected it on the basis of section 18–3–103(2), the defendant then might be in a position to claim the injurious effect of the statute on his defense. The silence of the trial record on such matters perhaps explains why the constitutionality of section 18–3–103(2) was never raised in the defendant's motion for a new trial.

The record simply is devoid of any showing that section 18–3–103(2) was applied against the defendant to prohibit or restrict him in his defense to second degree murder. *See People v. Campbell*, 196 Colo. 390, 589 P.2d 1360 (1978). The trial court erred in vacating the jury verdict of guilty to second degree murder and in granting the defendant's motion to dismiss this charge.

Accordingly, we reverse the order of dismissal and reinstate the jury verdict. *See United States v. Scott*, 437 U.S. 82, 98 S.Ct.

2187, 57 L.Ed.2d 65 (1978); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *People v. Rivas*, 197 Colo. 131, 591 P.2d 83 (1979); *People v. Gennings*, 196 Colo. 208, 583 P.2d 908 (1978). The cause is remanded to the district court with directions to proceed as provided by law.