The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Valentino ARAGON,
Defendant-Appellant.

No. 82SA90.

Supreme Court of Colorado,
En Banc.

Oct. 25, 1982.

Rehearing Denied Nov. 29, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Maes & Holland, Robert M. Maes, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, Valentino L. Aragon, appeals from his conviction of aggravated robbery, section 18–4–302, C.R.S.1973 (1978 Repl.Vol. 8).[1] He claims that the statutory definition of aggravated robbery, which permits a conviction upon proof of either the *mens rea* of specific intent or the culpable mental state of "knowingly," violates equal protection of the laws. He also argues that the trial court committed reversible error in refusing his tendered instructions on the lesser offenses of attempted aggravated robbery and simple robbery. We are unpersuaded by the defendant's claims and, accordingly, affirm the judgment.

---

[1]. The defendant's appeal was transferred to this court because of the constitutional challenge to the aggravated robbery statute. Sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S. 1973.

I.

The defendant was jointly charged with Donnie Edward Vigil and Ralph Daniel Cortez with the crime of aggravated robbery, which arose out of a criminal episode at the home of Rowena Sedar and her seventeen year old daughter, Roanne, on the evening of January 30, 1980, in Denver, Colorado.[2] The information alleged, in pertinent part, that during the act of robbery the defendant was armed with a gun, and that he either had the intent, if resisted, to kill, maim or wound the Sedars, or knowingly placed them in reasonable fear of death or bodily injury by the use of force, threats or intimidation with the gun. The defendant was tried separately from Vigil and Cortez.

The evidence at trial established the following events. During the early evening hours of January 30, 1980, the defendant, Vigil and Cortez consumed a substantial amount of beer, liquor and drugs while riding around Denver in Cortez's automobile. Later in the evening the three men decided to commit a robbery in order to obtain money for drugs. Vigil had two pistols in his possession, and Cortez had three ski masks and a sawed-off shotgun in the trunk of his automobile. After the Sedar home was selected for the robbery, the three perpetrators placed the ski masks over their faces and armed themselves with the weapons.

At approximately 8:15 p.m. they rang the doorbell of the Sedar home. When Mrs. Sedar came to the door, they forced her into the residence at gunpoint. Mrs. Sedar started screaming and one of the defendant's associates struck her on the side of the head. The defendant, who was armed with a pistol, stood guard over her in the front hallway while the other two men searched the house.

Mrs. Sedar's daughter, Roanne, was watching television in the basement when the intruders entered the home. Upon hearing screaming upstairs, she called the police and locked herself in a basement room. The defendant's two associates descended into the basement, forced Roanne out of the room and brought her upstairs. While the defendant stood guard over the Sedars, his two associates carried a portable television and a radio into the hallway near the front door. The robbers then made a demand for money, whereupon Mrs. Sedar and her daughter pointed out the location of their purses. The intruders fetched the purses and took the money contained in them.

Three police officers ultimately arrived at the home and, taking up positions in front and rear, announced their presence to the persons inside. One of the intruders was seen in the garage and was ordered by the officer to put down his weapons. He replied that he had hostages inside and would shoot them. After going back into the residence, this man a short time later charged into the garage with his weapon in hand. The officer fired at him. Immediately thereafter all three intruders surrendered to the police and were searched. The money taken from the Sedars was recovered from one of the perpetrators, Donnie Edward Vigil. The weapons and ammunition utilized in the robbery were seized inside the Sedar home.

The defendant admitted his participation in the crime but claimed that he lacked the *mens rea* for aggravated robbery due to his intoxication from alcohol and drugs. His testimony on cross-examination, however, was as follows:

"Q Did you have any trouble talking, Mr. Aragon, that night?

A No, I didn't.

Q Did you have any trouble walking?

A No, I didn't.

Q Did you have any trouble thinking?

A No, I didn't.

---

**2.** The defendant, along with Vigil and Cortez, was also charged with and convicted of first degree burglary, section 18–4–202, C.R.S.1973 (1978 Repl.Vol. 8), and using or possessing and threatening the use of a deadly weapon during the commission of aggravated robbery and first degree burglary, section 16–11–309, C.R.S.1973 (1981 Supp.). His claims on this appeal, however, relate solely to his conviction for aggravated robbery.

Q When Donnie Vigil told you that you should pull a robbery in order to get some money, you thought about that and decided whether or not you wanted to do that; is that what you told us?

A Yes, ma'am.

Q You decided that you did want to do it?

A After they said we could get more drugs."

At the conclusion of the evidence the defendant tendered instructions on the lesser offenses of attempted aggravated robbery and simple robbery, both of which the trial court refused. The court instructed the jury that the culpability requirement for aggravated robbery was either: (1) the specific intent, if resisted, to kill, maim or wound the person robbed or any other person; or (2) knowingly putting the person robbed or any other person in reasonable fear of death or bodily injury by the use of force, threats, or intimidation with a deadly weapon. By separate instruction the court informed the jury that the affirmative defenses of impaired mental condition and intoxication were applicable to that form of aggravated robbery requiring a specific intent to kill, maim or wound. In addition, the jury was instructed that "[i]n your determination of whether the People have proved beyond a reasonable doubt that the defendant acted 'knowingly' as required by the other alternative method of committing aggravated robbery, you may consider all of the evidence offered in this matter, including evidence of his mental condition." The jury found the defendant guilty of aggravated robbery, for which he was sentenced to a term of eight years, and this appeal followed.

We will consider first the defendant's equal protection challenge to the statutory definition of aggravated robbery, and next the trial court's refusal to instruct the jury on the lesser offenses of attempted aggravated robbery and simple robbery.

**3.** The right to equal protection of the laws finds support in the Due Process Clause, Article II, Section 25, of the Colorado Constitution. *E.g.,*

## II.

The defendant's equal protection argument is two-pronged. He asserts that section 18–4–302, C.R.S.1973 (1978 Repl.Vol. 8), violates equal protection of the laws, .*U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25,[3] because it punishes aggravated robbery with the same penalty regardless of whether the offender acts "with specific intent" or merely acts "knowingly." He also alleges an equal protection infirmity by reason of section 18–1–803, C.R.S.1973 (1978 Repl.Vol. 8), which restricts the affirmative defense of impaired mental condition to that form of aggravated robbery requiring a specific intent to kill, maim or wound. We find no merit in the defendant's claims.

## A.

Regarding the first prong of the defendant's equal protection argument, we have repeatedly held that an equal protection problem arises under the Colorado Constitution only when different statutes proscribe the same criminal conduct with disparate criminal sanctions. *E.g., People v. Marcy,* 628 P.2d 69 (Colo.1981); *People v. Taggart,* 621 P.2d 1375 (Colo.1981); *People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). Aggravated robbery, as applicable to this case, is committed when the offender knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation and either: (1) is armed with a deadly weapon with intent, if resisted, to kill, maim or wound the person robbed or any other person, section 18–4–302(1)(a), C.R.S.1973 (1978 Repl. Vol. 8); or (2) employs force, threats or intimidation with a deadly weapon and knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury, section 18–4–302(1)(b), C.R.S. 1973 (1978 Repl.Vol. 8). Both forms of aggravated robbery are class 3 felonies, each

*Heninger v. Charnes,* Colo., 613 P.2d 884 (1980); *People v. Max,* 70 Colo. 100, 198 P. 150 (1921).

carrying a presumptive sentence of four to eight years plus one year of parole. Section 18–1–105(1)(a), C.R.S.1973 (1981 Supp.). Thus, the criminal penalties established by the statutory proscription of aggravated robbery are not disparate but identical.

 The power to define criminal conduct and to establish the legal components of criminal liability rests with the General Assembly, *Colo. Const.* Art. V, Sec. 1. As we view it, the alternative culpability elements set forth in section 18–4–302 represent a legislative judgment that regardless of whether an aggravated robbery is committed "with intent" or "knowingly," the act is equally heinous in the eyes of the law and deserving of similar punishment. This judgment is within the legislature's prerogative, particularly in view of the fact that the state of mind of a perpetrator of aggravated robbery is rarely susceptible of direct proof. *See Ruark v. People,* 157 Colo. 320, 402 P.2d 637 (1965). No legitimate equal protection issue is implicated by the legislative proscription under consideration.

### B.

The defendant also asserts that section 18–1–803, C.R.S.1973 (1978 Repl.Vol. 8), which restricts the affirmative defense of impaired mental condition to specific intent crimes, violates equal protection of the laws by prohibiting an accused from offering mental impairment evidence in defense of that form of aggravated robbery requiring the culpability element of "knowingly." The record here, however, fails to establish that the challenged statute was applied to the defendant in an unconstitutional manner.

 Mental impairment evidence consists of evidence of a mental disease or defect which affects the defendant's cognitive or volitional faculties to the point of rendering him incapable of entertaining the *mens rea* for the crime charged against him. *E.g., Hendershott v. People,* 653 P.2d 385 (Colo.1982); *People v. Gallegos,* 628 P.2d 999 (Colo.1981); *People v. Ledman,* 622 P.2d 534 (Colo.1981). The defendant offered no such evidence in this case. Instead, the only evidence he offered to negate culpability was evidence of self-induced intoxication. Self-induced intoxication, however, is not a mental disease or defect. Rather, self-induced intoxication refers to a disturbance of mental or physical capacities caused by substances, as here, knowingly introduced into the body, which the defendant knew or ought to have known had the tendency to cause the resulting disturbance. Section 18–1–804(5), C.R.S.1973 (1978 Repl.Vol. 8); *Hendershott v. People, supra.* It is the settled law of this jurisdiction that evidence of self-induced intoxication is not admissible to negate the culpability element of "knowingly." *Hendershott v. People, supra; People v. Del Guidice,* 199 Colo. 41, 606 P.2d 840 (1979). Since the defendant failed to offer any evidence of a mental disease or defect on the issue of culpability, he is in no position to question the constitutionality of a statute which was never applied against him. *See, e.g., People v. Gallegos, supra; People v. Fite,* 627 P.2d 761 (Colo.1981).[4]

### III.

 We turn to the trial court's refusal to instruct the jury on the lesser offenses of attempted aggravated robbery and simple robbery. The defendant's entitlement to instructions on the lesser offenses depends upon the existence of a rational basis in the

---

4. Moreover, we have previously held that, by itself, the statutory limitation of the affirmative defense of impaired mental condition to specific intent crimes does not create any presumption of culpability for nonspecific intent offenses, nor does it abridge an accused's due process right to prosecutorial proof of guilt beyond a reasonable doubt on all the essential elements of the crime charged against him.

*E.g., People v. Gallegos,* 628 P.2d 999 (Colo. 1981); *People v. Ledman,* 622 P.2d 534 (Colo. 1981). We also have held that the statutory scheme does not prevent an accused from offering reliable and relevant evidence of a mental disease or defect in order to contest the culpability element of "knowingly." *Hendershott v. People,* 653 P.2d 385 (Colo.1982).

evidence to support a verdict acquitting him of aggravated robbery and convicting him of the lesser offenses. Section 18–1–408(6), C.R.S.1973 (1978 Repl.Vol. 8).[5] A review of the evidence satisfies us that there is no support in the record for submission of the lesser offense instructions to the jury.

### A.

Criminal attempt to commit aggravated robbery requires that the offender act with the kind of culpability otherwise required for the commission of aggravated robbery and that he engage in conduct constituting a substantial step towards the commission of that offense. Section 18–2–101(1), C.R.S.1973 (1978 Repl.Vol. 8).[6] The evidence in this case establishes beyond dispute that a completed act of aggravated robbery, not just a mere attempt, took place in the Sedar home when the defendant and his associates seized money and other property from the presence of the victims at gunpoint. Indeed, the money taken from the women's purses was recovered from one of the participants in the crime after his arrest outside the Sedar residence. The defendant's tendered instruction on attempted robbery, therefore, was properly refused.

### B.

The lesser offense of simple robbery is committed when the offender "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation . . . ." Section 18–4–301, C.R.S.1973 (1978 Repl. Vol. 8). The essential difference between simple robbery and that form of aggravated robbery requiring the culpability element of "knowingly" is that the latter offense requires the defendant to "knowingly" put the person robbed or any other person in reasonable fear of death or bodily injury by the use of force, threats or intimidation with a deadly weapon. Section 18–4–302(1)(b), C.R.S.1973 (1978 Repl.Vol. 8). A person acts knowingly with respect to conduct or a circumstance when he is aware that his conduct is of such nature or that such circumstance exists; and a person acts knowingly with respect to a result when he is aware that his conduct is practically certain to cause the result. Section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8).

In this case the evidence undisputedly established an awareness by the defendant that his use of a pistol against the Sedars constituted a threat to their safety and placed them in reasonable fear of death or bodily injury. In order to find the defendant guilty of the lesser offense of simple robbery, which also requires the culpability element of "knowingly," the jury would be required to disregard the prosecution's evidence of any crime at all. If this evidence is disregarded, the only rational alternative for the jury would be to find the defendant not guilty of the crime charged, rather than finding him guilty of the lesser offense of simple robbery. Given the alternative culpability element of "knowingly" for aggravated robbery, there was no rational basis for finding that the defendant lacked the culpability element of "knowingly" for aggravated robbery but nevertheless satisfied the culpability element of "knowingly" for simple robbery. See, e.g., Bowers v. People, Colo., 617 P.2d 560 (1980); People v. Lundy, 188 Colo. 194, 533 P.2d 920

---

**5.** We recognize that under some circumstances an accused may be entitled to an instruction on a lesser nonincluded offense when the instruction is supported by the evidence and the defendant requests it. E.g., People v. Rivera, 186 Colo. 24, 525 P.2d 431 (1974). Before a lesser nonincluded offense may be submitted to the jury under a theory of the case instruction, however, there must be some evidence in the record to rationally support a conviction on the lesser offense. Rational support in the record means that a jury reasonably could acquit the defendant of the offense charged and simultaneously find him guilty of the lesser noninclud- ed offense. See, e.g., People v. Brake, 191 Colo. 390, 553 P.2d 763 (1976); People v. Plot- ner, 188 Colo. 297, 534 P.2d 791 (1975).

**6.** Section 18–2–101(1), C.R.S.1973 (1978 Repl. Vol. 8) defines a substantial step as "any con- duct whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commis- sion of the offense."

(1975); *People v. Reed,* 180 Colo. 16, 502 P.2d 952 (1972); *Lucero v. People,* 161 Colo. 568, 423 P.2d 577 (1967).[7] The trial court, therefore, properly rejected the defendant's tendered instruction on simple robbery.

The judgment is affirmed.

---

**7.** Although arguably the defendant would have a stronger case for an instruction on simple robbery if he had been charged only with that form of aggravated robbery requiring specific intent, in that self-induced intoxication is an affirmative defense to specific intent offenses, section 18–1–804(1), C.R.S.1973 (1978 Repl. Vol. 8), he was charged in this case in the alternative with both aggravated robbery by specific intent and aggravated robbery by knowing conduct. In view of the alternative nature of the charge, our determination of the defendant's entitlement to an instruction on simple robbery depends upon whether there was a rational basis for the jury to find that the defendant acted neither with specific intent nor "knowingly" with respect to the crime of aggravated robbery but, nevertheless, acted with the requisite culpability for simple robbery.