**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Raymond Anthony DERRERA, Defendant-Appellant.**

**No. 82SA244.**

Supreme Court of Colorado, En Banc.

July 18, 1983.

Rehearing Denied Aug. 29, 1983.

---

**1364** 

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for defendant-appellant.

NEIGHBORS, Justice.

The defendant appeals the judgment entered by the district court after the jury found him guilty of attempted robbery[1] and attempted second-degree sexual assault.[2]

The defendant urges the following grounds for reversal of his convictions: (1) The instructions given to the jury were defective. (2) A prior felony conviction obtained in violation of Crim.P. 11 was improperly admitted into evidence to impeach the defendant when he testified. (3) The prior felony conviction is based upon an unconstitutional statute. (4) The evidence was insufficient to support the convictions. (5) The trial court erred in granting the district attorney's motion to amend the information and in denying the defendant's motion for a continuance.

We affirm the defendant's conviction for attempted robbery. However, the evidence is insufficient to support the conviction for attempted second-degree sexual assault. Therefore, the judgment is affirmed, in part, and reversed, in part. The case will be remanded to the trial court with directions to dismiss the charge of second-degree sexual assault.

## I.

The victim testified that on March 14, 1980, at 11:30 p.m., she left work at Lutheran Medical Center. She got into her new Mercury Capri automobile and began driving to her residence which was located at approximately 50th and Eldridge in Jefferson County. However, her car stalled under the I–70 overpass on 44th Avenue, near Mt. Olivet Cemetery. The car was out of gasoline, even though the fuel gauge showed that the gas tank was one-quarter full. She spent nearly an hour reading the new car manual and attempting to start the vehicle. The defendant stopped to assist the victim and parked his car behind her Capri. The defendant unsuccessfully tried to start the car. The defendant then asked the victim if she wanted a ride. The victim replied: "Please. It is not very far, if you don't mind." The defendant replied: "Okay." The victim and the defendant pushed her car to the side of the road and got into his Volkswagen automobile.

The victim did not tell the defendant precisely where she lived. According to her testimony, she told the defendant at least twice that she lived "up the road a ways," and "up the road" in response to his questions while they were driving.

As the victim was explaining to the defendant where they were going, the defendant stuck his hand underneath her dress and touched the inside of her left mid-thigh. The victim pushed his hand away and said "What are you doing? Please don't do this to me." The defendant then twice ordered

1. Sections 18–2–101 and 18–4–301, C.R.S.1973 (1978 Repl.Vol. 8).

2. Sections 18–2–101 and 18–3–403, C.R.S.1973 (1978 Repl.Vol. 8).

the victim to "[g]ive me your money." The victim denied having any funds in her possession. The victim opened the door and prepared to jump from the moving vehicle when the defendant said "I have a gun." After the defendant pulled "something" that "didn't look like a gun," the victim said, "No you don't," as she jumped from the car, which was moving at 30 mph. According to the victim, the defendant then twice attempted to run over her with his car. She ran to the residence of some acquaintances and called her boyfriend. She later called the police at the suggestion of a friend.

The victim provided the authorities with a description of the defendant and his car. A Jefferson County Deputy Sheriff located the car in the parking lot at 912 Vasquez Street, where the defendant lived in an apartment. A photographic line-up was shown to the victim who identified the defendant as the person involved in the incident. The defendant was arrested pursuant to a warrant on or about April 1, 1980.

The defendant's version of the incident differs from the account reported by the victim. He testified that he stopped to help the victim start her car. He stated that he and the victim smoked marijuana and drank beer while he was trying to start her Capri. He said that the victim offered him "gas money" to drive her home, but she refused to tell him where she lived. He admitted grabbing her leg, but insisted he did so as she jumped from his car. He testified that he turned the car around and returned to the victim to ask what was wrong, but she ran away.

The jury found the defendant guilty of both charges. The trial judge found the existence of mitigating circumstances and sentenced the defendant to concurrent one year terms at the Department of Corrections and one year of parole on each charge.

## II.

■ The defendant's first argument for reversal is that the culpable mental state instruction given to the jury which defines "knowingly" is defective. The instruction states, in pertinent part:

"A person acts 'knowingly' with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

However, section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8), defines "knowingly" as follows:

"A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' . . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

The instruction is of critical significance because "knowingly" is the culpable mental state element for both attempted robbery and attempted second-degree sexual assault.

■ The instruction appears inadequate because the "conduct" and "circumstance" provisions are not included. The defendant did not object to the instruction at trial, nor was the issue raised in his motion for a new trial. Therefore, we are required to analyze the defendant's argument under the plain error doctrine since the instruction, on its face, appears not to adequately instruct the jury on an essential element of the charges, i.e., "knowingly." Because trial courts have failed in a number of cases to include the complete definition of "knowingly" in the instructions, we have been required to address this question previously. See, e.g., People v. Curtis, 627 P.2d 734 (Colo.1981); People v. Bridges, 620 P.2d 1 (Colo.1980); People v. Hardin, 199 Colo. 229, 607 P.2d 1291 (1980).

### A.

The statutory scheme governing the mens rea requirement for criminal conduct is denominated in the Colorado Criminal Code as the "culpable mental state." It is patterned after section 301 of the Michigan

*Proposal*[3] and generally follows section 2.02 of the *Model Penal Code.*[4] Comment, 1971 Perm.Cum.Supp., C.R.S.1963, 40–1–601. The committee commentary to § 305 of the *Michigan Proposal* states that the definition of "knowingly" "is taken from New York Revised Penal Law § 15.05, which in turn is based on Model Penal Code § 2.02 . . . ." *Michigan Proposal* at 35. Accordingly, the genesis of the definition of "knowingly" in our Criminal Code is section 2.02 of the *Model Penal Code* which defines the term as follows:

"(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

"(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."

The comments to section 2.02 state, in part:

"The draft acknowledges four kinds of culpability: purpose, knowledge, recklessness and negligence. It also recognizes that the material elements of offenses vary in that they may involve (1) the nature of the forbidden conduct or (2) the attendant circumstances or (3) the result of the conduct. With respect to each of these three types of elements, the draft attempts to define each of the kinds of culpability that may arise. The resulting distinctions are, we think, both necessary and sufficient for the general purposes of penal legislation."

*Model Penal Code* § 2.02 (Tent. Draft No. 4 at 124 (1955)). The goal of the drafters of the *Model Penal Code* in addressing the culpability issue was to discourage the use of ambiguous and confusing concepts such as "general criminal intent," "malice," and "willfulness."

### B.

Under the *Colorado Criminal Code,* "knowingly" is the second highest level of criminal culpability. "Knowingly" applies to *conduct* ("when he is aware that his conduct is of such nature"), *circumstance* ("when he is aware . . . that such circumstance exists"), and *result* ("when he is aware that his conduct is practically certain to cause the result"). Some examples of each are: the physical act of committing an assault (conduct), the falsity of a statement or the stolen status of property (circumstance), and the infliction of serious bodily injury or causing the death of another (result). *See* Feinberg, *Toward a New Approach to Proving Culpability: Mens Rea and the Proposed Federal Criminal Code,* 18 *Am.Crim.L.Rev.* 123, 128 (1980); *People v. Noble,* 635 P.2d 203 (Colo.1981); *People v. Andrews,* 632 P.2d 1012 (Colo.1981); *People v. Curtis, supra.* In *Curtis,* we held that the instruction given by the trial court defining "knowingly" with respect to conduct and circumstances, but not result, was defective in a case involving extreme indifference murder. This case presents the other side of that coin, *i.e.,* the jury was instructed as to result, but not as to the conduct or circumstance elements of "knowingly."

### C.

Criminal attempt is a crime in which the defendant's purpose is to effect a criminal result. *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); *Hartzel v. United States,* 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944). In *People v. Frysig,* 628 P.2d 1004 (Colo.1981), we held:

"More precisely, in order to be guilty of criminal attempt, the actor must act with the kind of culpability otherwise required for commission of the underlying offense and must engage in the conduct which constitutes the substantial step with the further intent to perform acts which, if completed, would constitute the underlying offense."

628 P.2d at 1010. Therefore, we now turn to a discussion of the "knowingly" element

---

**3.** Michigan State Bar, *Michigan Revised Criminal Code* (Final Draft Sept. 1967).

**4.** American Law Institute, *Model Penal Code,* Proposed Official Draft § 2.02 (1962).

with respect to the crimes of robbery and second-degree sexual assault.

We agree with the defendant's position that robbery involves conduct (use of force, threats, or intimidation), circumstance (thing of value and from the person or presence of another), and result (taking). Similarly, second-degree sexual assault involves all three components of "knowingly": conduct (the physical act of causing submission), circumstance (using means of sufficient consequence reasonably calculated to cause submission), and result (sexual penetration or intrusion). *See People v. Smith,* 638 P.2d 1, 5, n. 7 (Colo.1981). The specific issue presented is whether the failure of the trial court to include the conduct and circumstance components in the instruction defining "knowingly" was prejudicial to the substantial rights of the defendant in light of the fact that no contemporaneous objection was made to the instruction.

The General Assembly has determined that "knowingly" is the culpable mental state for general intent crimes.[5] Section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8). Nevertheless, that part of the definition of "knowingly" which states "aware that his conduct is practically certain to cause the result" approaches the formulation of a specific intent requirement. The author of the practice commentaries to the *New York Penal Law* reached a similar conclusion. Under the *New York Code,* "knowingly" applies only to awareness of the nature of one's conduct or the existence of specified facts or circumstances.[6]

"Under the formulations of the Model Penal Code (§ 2.02[2bii]) and the Illinois Criminal Code (§ 4–5[b]), 'knowingly' is, in one phase, almost synonymous with 'intentionally' in that a person achieves a

given result 'knowingly' when he 'is practically certain' that his conduct will cause that result. The distinction between 'knowingly' and 'intentionally' in that context appears highly technical or semantic, and the Revised Penal Law does not employ the word 'knowingly' in defining *result* offenses."

Practice Commentaries, *New York Penal Law* § 15.05 (McKinney 1975) (emphasis in original). The defendant's awareness of the proscribed result is judged by a subjective standard. *People v. District Court,* 652 P.2d 582 (Colo.1982); *People v. District Court,* 198 Colo. 70, 595 P.2d 1045 (1979); *People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978); *Commonwealth v. Boris,* 317 Mass. 309, 58 N.E.2d 8 (1944); *Schaffer v. United States,* 221 F.2d 17 (5th Cir.1955). *See People v. Holloway,* 193 Colo. 450, 568 P.2d 29 (1977) (the defendant's conviction for receiving stolen property was upheld where he believed the property had been stolen even though such was not the case). The defendant's awareness may be inferred from the defendant's conduct and the surrounding circumstances. *People v. District Court,* 652 P.2d 582 (Colo.1982).

In a case involving attempted robbery and attempted second-degree sexual assault, we hold that an instruction defining "knowingly" as an awareness by the defendant that his conduct is "practically certain to cause the result" would necessarily require the jury to be satisfied beyond a reasonable doubt that he also was aware that "his conduct is of such nature" and that "the circumstance exists" before he could be found guilty of these offenses. Although the instruction given in this case was technically incomplete, we are persuaded that the instruction did not prejudice the defendant. This conclusion is con-

---

**5.** The drafters of the *Model Penal Code* state: "[W]e can see no virtue in preserving the concept of 'general intent' which has been an abiding source of ambiguity and of confusion in the penal law." American Law Institute, *Model Penal Code,* Tent. Draft No. 4 § 2.02 Comments at 128 (1955).

**6.** When the *Colorado Criminal Code* was adopted by the General Assembly in 1971,

"knowingly" was defined only in terms of "conduct" and "circumstance." 1971 Perm. Cum.Supp. C.R.S.1963, 40–1–601(7). The definition was amended to include the element of "awareness that one's conduct is practically certain to cause the result" effective July 1, 1977. Section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8). *See People v. Noble,* 635 P.2d at 210–11, n. 18 (Colo.1981).

sistent with our decision in *People v. Mason,* 643 P.2d 745 (Colo.1982). In *Mason,* we held it was not plain error when the trial court gave an instruction on specific intent to defraud in a fraud by check case, but failed to instruct the jury on "knowing," a term used in the statute. We reasoned as follows:

> "Under the instructions as given a juror could not reasonably conclude that the defendant could possess the specific intent to defraud, which is required for fraud by check, but at the same time be unaware of or mistaken about the adequacy of his checking account funds to pay the checks which he issued."

643 P.2d at 752. The trial court's failure to instruct the jury on the conduct and circumstance components of "knowingly" in the mental culpability instruction was not plain error because the substantial rights of the defendant were not affected. *People v. Mattas,* 645 P.2d 254 (Colo.1982); *People v. Mason, supra.*

### III.

The defendant next contends that his 1971 guilty plea to the charge of immodest and immoral liberties was invalid because the trial judge who accepted the plea failed to comply with the requirements of Crim.P. 11. He argues it was reversible error for the trial court in this case to admit the resulting conviction for impeachment purposes when he testified.

■ The defendant asserts three reasons why the plea is invalid. First, he claims that the trial court did not advise him of his right to counsel. The transcript of the providency hearing establishes that no such advisement was given. However, the public defender represented the defendant at the preliminary hearing and at all other stages of the case. When accepting a plea of guilty, the trial court is not necessarily required to advise a defendant of his right to counsel when the defendant is represented by counsel at the providency hearing. To impose such a requirement when the public defender has represented the defendant from arrest to sentencing would exalt form over substance. *People v. Lambert,* 189 Colo. 264, 539 P.2d 1238 (1975). The defendant's reliance on *People v. Harrington,* 179 Colo. 312, 500 P.2d 360 (1972), is misplaced. In *Harrington,* the defendant appeared *pro se,* withdrew his plea of not guilty by reason of insanity and entered a plea of guilty to robbery. The plea was vacated on appeal because the trial court did not advise the defendant of his right to counsel and his right to a jury trial. Thus, *Harrington* is clearly distinguishable on its facts.

■ The defendant's next ground asserted in support of his contention that the plea of guilty was invalid is that the trial court failed to advise him of his right against self-incrimination. Crim.P. 11, as it existed on August 31, 1971,[7] when the defendant entered his guilty plea, did not require the

---

7. Crim.P. 11(b) and (c) stated as follows:

"(b) *Rights of an Accused.* When a defendant is brought before a court, it is the duty of the judge to inform him and determine that he understands:

(1) He need make no statement and any statement made can and may be used against him;

(2) He has a right to counsel;

(3) If he is an indigent person, he will be assigned counsel as provided in Rule 44;

(4) Any plea he makes must be voluntary on his part and not the result of undue influence or coercion on the part of anyone;

(5) He has a right to bail, if the offense is bailable, and the amount of bail that has been set by the court.

"(c) *Pleas of Guilty and Nolo Contendere.* The court shall not accept a plea of nolo contendere without first determining that the defendant is advised of all the rights set forth in (b) of this Rule and also determining:

(1) That the defendant understands the charge against him;

(2) That the plea is voluntary on defendant's part and is not the result of undue influence or coercion on the part of anyone;

(3) That he understands the right to trial by jury;

(4) That he understands the possible penalty or penalties and the possible places of incarceration;

(5) And that the defendant understands that the court will not be bound by any representations made to the defendant by anyone concerning the penalty to be imposed or the granting or the denial of probation."

court expressly to advise an accused of his privilege against self-incrimination before accepting a guilty plea, but to determine whether the defendant had previously been advised of this right. Only if the defendant had not been so advised, was the court required formally to advise him of his right to silence. Under the then existing Crim.P. 5 the county court, upon the initial appearance of the defendant after his arrest, was required to advise him "that he is not required to make any statement and that any statement made by him may be used against him." The defendant made no showing in this case that he was not advised in compliance with this rule. Moreover, the attorney who represented the defendant at the 1971 providency hearing testified that, although he had no perfect recollection of his pre-plea advice to the defendant, it was his customary and routine practice to advise his clients of the constitutional rights waived by a plea of guilty. In the absence of any contrary showing by the defendant, we must presume that the judicial proceedings prior to the entry of his plea of guilty were conducted in conformity with the controlling rules of criminal procedure. The defendant has failed to demonstrate that he was not aware of his privilege against self-incrimination when he accepted the plea bargain and tendered a plea of guilty to the court. Under these circumstances we find no merit in his claim.

The defendant's final argument is that the trial court failed to ask him if his plea was voluntary and whether any promises had been made to him. This argument is spurious for two reasons. First, the trial judge advised the defendant that his plea had to be voluntary and that any promises which had been made were not binding on the court. Admittedly, the judge failed to *ask* the defendant whether any such promises or coercion were involved in his decision to plead guilty. However, implicit in the court's acceptance of the guilty plea is its determination that the plea was intelligently and voluntarily entered. *People v. Lambert, supra.* Second, at the hearing on the motion *in limine* directed to the admissibility of the prior conviction, the defendant's

attorney withdrew any claim that the plea was involuntary or that any promises or coercion influenced the defendant's decision to plead guilty. Accordingly, we are not convinced that the defendant's plea of guilty to the charge of immodest and immoral liberties was obtained in violation of Crim.P. 11. Therefore, the resulting conviction was properly admitted into evidence to impeach the defendant.

## IV.

The defendant's next argument for reversal is that the evidence is insufficient to establish that the charges of attempted robbery and attempted second-degree sexual assault were proved beyond a reasonable doubt. Therefore, we must apply the test announced in *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973), to the evidence in this case. In *Bennett* we adopted the "substantial evidence test" and held that, in ruling on a motion for judgment of acquittal, the trial judge

"must determine whether the evidence before the jury is sufficient in both quantity and quality to submit the issue of the defendant's guilt or innocence to the jury.

. . . .

"The issue before the trial judge is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."

183 Colo. at 129–30, 515 P.2d 466. As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the charge proven beyond a reasonable doubt."

443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original).

## A.

In applying the *Bennett* test to the evidence on the charge of attempted second-degree sexual assault, we are convinced that the evidence is insufficient, as a matter of law, to establish the defendant's guilt beyond a reasonable doubt.

The only evidence which would tend to support the jury's finding that the defendant was guilty of attempted second-degree sexual assault is the victim's testimony that the defendant touched her on her left mid-thigh and the defendant's vague admission that he was "coming-on" to the victim when he asked her to go with him to his apartment.

As noted in section II.C. of this opinion, in order to be convicted of criminal attempt, a defendant must have the criminal culpability required for the commission of the underlying offense and must engage in conduct which constitutes a substantial step to commit the crime with the "intent" to perform the acts which constitute the underlying offense. *People v. Frysig, supra.*

Second-degree sexual assault is the knowing infliction of sexual penetration or sexual intrusion upon a victim and causing submission of the victim to such contact by means of sufficient consequence reasonably calculated to cause submission. Section 18–3–403, C.R.S.1973 (1978 Repl. Vol. 8). It is not enough that a defendant intended to cause submission to sexual penetration or sexual intrusion; he must perform some act which in connection with his "intent" constitutes the attempt. *Mainville v. State,* 607 P.2d 339 (Wyo.1980); 65 *Am. Jur.2d, Rape* § 25 (1972). We are persuaded that the touching of the victim by the defendant and requesting that she go to his apartment, without more, is insufficient evidence to establish any "intent" to commit the crime of second-degree sexual assault. Nor does the touching in this case constitute a substantial step toward the commission of the underlying offense. *See State v. Carr,* 230 Kan. 322, 634 P.2d 1104 (1981). We agree with the district attorney's candid analysis made during the hearing on the motion for judgment of acquittal that the defendant "was brushed off and immediately went into an attempted robbery."

## B.

After applying the *Bennett* test to the evidence on the charge of attempted robbery, we conclude that the evidence is sufficient to support the defendant's conviction. The defendant's statements "Give me your money" and "I have a gun," plus his conduct in reaching for an object and in attempting to strike the victim with his automobile is sufficient evidence to support the jury's finding that the defendant was guilty of attempted robbery in accordance with the standard announced in *People v. Frysig, supra.*

## V.

Since we have held that the evidence is insufficient to support the defendant's conviction for attempted second-degree sexual assault, the defendant's arguments directed to the jury instructions on that crime are moot.

We have considered the defendant's remaining arguments: (1) that the statute proscribing assault on a child, immodest and immoral liberties, 1965 Perm.Cum.Supp., C.R.S.1963, 40–2–32(2), is unconstitutionally vague; (2) that the trial court erred in permitting the district attorney to amend the information on the day prior to trial to change the culpable mental state from "intentionally" to "knowingly;" and (3) that the trial court erred in denying the defendant's motion for a continuance of the trial. We hold that these arguments are governed by long-standing precedents and do not warrant further consideration.

## VI.

The defendant's conviction of attempted robbery is affirmed. The defendant's conviction for attempted second-degree sexual assault is reversed. This case is remanded to the trial court with directions to dismiss count 2 of the information charging the

defendant with attempted second-degree sexual assault.