Michael Darnell CHAMBERS,
Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 82SC176.

Supreme Court of Colorado,
En Banc.

May 21, 1984.

Rehearings Denied June 11, 1984.

David F. Vela, Colo. State Public Defender, Jody Sorensen Theis, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, First Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Chambers*, No. 80CA0905 (Colo.App. March 25, 1982). After a jury trial in Jefferson County District Court, the defendant, Michael Darnell Chambers, was convicted of attempted first degree murder,[1] first degree assault,[2] first degree sexual assault,[3] second degree kidnapping,[4] and three counts of crime of violence.[5] The Colorado Court of Appeals affirmed the convictions. On certiorari review, the defendant cites as error the failure of the jury instructions to specify a culpable mental state for the crime of kidnapping, the failure of the jury instructions to define the mental state "knowingly" in sufficient detail, and the refusal of the trial court to suppress evidence not made available to the defense until the time of trial. We reverse the second degree kidnapping conviction and affirm the judgment of the court of appeals in all other respects.

The nineteen-year-old victim's uncontroverted testimony was that on the evening of November 13, 1979, she was accosted in a parking lot by the defendant and told that she would not be harmed if she were quiet. When the victim screamed, the defendant produced a pistol and fired a shot, which passed through her purse and bruised her hip. Chambers then carried the struggling victim to his car, where a companion was waiting. When the victim attempted to flee, the defendant shot her a second time, the bullet entering her chest and lodging near her spine. The defendant then ordered her into the car and drove her to a residential neighborhood where both men raped her.

After the sexual assaults, the defendant and his companion told the victim a number of times that they were going to kill her because she could identify them. They drove her to another area where they bound her hands, blindfolded her and led her to the base of an embankment. There, the defendant tightened a thin, flexible object around her neck, inducing unconsciousness.

When the victim revived, Chambers and his companion decided to drive her to a hospital for treatment of her gunshot wounds. They first ascertained her address in order to be able to retaliate against her in the event she disclosed their crimes to the police. The victim volunteered her cooperation in concealing the events of the evening and, after the three fabricated an explanation for her injuries, Chambers and his companion took the victim to a hospital, where she was admitted for treatment. The following day the victim related the above version of the events to an investigating officer.

## I.

The defendant contends that the jury instruction concerning the elements of second degree kidnapping was rendered fatally defective by the omission of the proper culpable mental state.[6] We agree.

It is well established that a criminal conviction may only ensue upon proof beyond a reasonable doubt of every element constituting the crime charged. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A corollary to this principle is that members of a jury must be adequately instructed to enable them to assess whether every element of an offense has been proved beyond a reasonable doubt. *See People v. Martinez*, 634 P.2d 26 (Colo.1981).

---

1. § 18–2–101 and 18–3–102, 8 C.R.S. (1973).

2. § 18–3–202, 8 C.R.S. (1973).

3. § 18–3–402, 8 C.R.S. (1973).

4. § 18–3–302, 8 C.R.S. (1973).

5. § 16–11–309, 8 C.R.S. (Supp.1983).

6. The relevant portion of section 18–3–302, 8 C.R.S. (1973) provides:

 (1) Any person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping.

**1176**

In this case the jury instruction defining the offense of second degree kidnapping omitted the statutory culpable mental state, "knowingly." [7] A separate joint operation instruction stated that, in order for a crime to have been committed, the proscribed act must have occurred in conjunction with a culpable mental state.[8] This instruction further specified the pertinent culpable mental states as "intentionally" and "knowingly" and defined those terms.

The defendant failed to object to the omission of the culpable mental state from the second degree kidnapping instruction. *See* Crim.P. 30. However, a trial court is under an obligation to instruct the jury properly, *People v. Alvarez*, 187 Colo. 290, 530 P.2d 506 (1975), and a failure to do so as to every element of a crime charged is plain error. *People v. Butcher*, 180 Colo. 429, 506 P.2d 362 (1973). Under the plain error standard, applicable here, we must review the defendant's assignment of error to determine whether his substantial rights were seriously affected. Crim.P. 52(b); *People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972).

We have held that the better practice is to include the applicable culpable mental state in each jury instruction setting forth the elements of a crime charged. *People v. Mattas*, 645 P.2d 254 (Colo.1982); *People v. Martinez*, 634 P.2d 26 (Colo. 1981). Where this has not been done, we test the sufficiency of the instructions on plain error review by examining them as a whole to ascertain whether the court clearly informed the jury that the appropriate culpable mental state was an essential element of the crime. *People v. Mattas; People v. Martinez; see People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972).

In the present case the instructions on second degree kidnapping did not give the jury the requisite guidance. The elements instruction (no. 18) made no mention of a culpable mental state. The joint operation instruction (no. 14) contained definitions of two culpable mental states, "intentionally" or "with intent," and "knowingly." The elemental instructions for each of the other substantive crimes included the appropriate culpable mental state. In the case of attempted first degree murder (no. 16) and first degree assault (no. 17) this was "with intent." With respect to first degree sexual assault (no. 19), "knowingly" was specified as the mental state requisite

---

7. Instruction No. 18 provided that:
 A person commits the crime of kidnapping in the second degree if:
 He forcibly or otherwise seizes and carries any person from one place to another without his consent and without lawful justification.
 The elements of kidnapping in the second degree are therefore:
 [1]. Seizing and carrying any person from one place to another.
 [2]. Without his consent, and
 [3]. Without lawful justification.
 If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant MICHAEL DARNELL CHAMBERS, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the information, you should find the defendant guilty of kidnapping in the second degree; if you do not so find, you should find the defendant not guilty of kidnapping in the second degree.

8. Instruction No. 14 provided that:
 To constitute a crime, there must be the joint operation of an act forbidden by law and a culpable mental state of the defendant. A culpable mental state means "intentionally" or "knowingly" as the terms are explained in this instruction.
 The culpable mental state is just as much an element of the crime as the act. The culpable mental state must be proven beyond a reasonable doubt, as a matter of fact, either by direct or circumstantial evidence. The culpable mental state may be manifested by the circumstances connected with the perpetration of the offense and the sound mind and discretion of the defendant.
 Commission of the act alone does not warrant the presumption that the defendant had the requisite culpable mental state.
 A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result prescribed [sic] by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred.
 A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

to conviction. We conclude that the jury instructions here did not link the elements instruction for second degree kidnapping with the joint operation instruction so closely as to inform the jury with sufficient clarity that it could not convict the defendant of second degree kidnapping unless it found that he acted with a culpable mental state. Given the absence of such linkage, the number of substantive offenses, and the utilization of both defined culpable mental states in elemental instructions for other substantive offenses, we conclude that the jury was not clearly informed that a culpable mental state is an element of the crime of second degree kidnapping. Therefore, the trial court committed plain error, and the defendant's conviction for second degree kidnapping must be reversed.

Our conclusion is consistent with our prior cases in which we have considered the sufficiency of instructions omitting the culpable mental state from elemental instructions in various factual contexts. In *People v. Hart*, 658 P.2d 857 (Colo.1983), we found no plain error in an elemental instruction omitting the culpable mental state of "knowingly" where only two crimes were charged, the jury instruction regarding the elements of the second crime included "specific intent," and a joint operation instruction was given defining both "knowingly" and "specific intent." There, the definition of "knowingly," to have any relevance, must have been applicable to the crime defined without reference to a culpable mental state, and in any event, should the jury have mistakenly applied the more stringent mental state, "specific intent," the error would have inured to the defendant's benefit. In *People v. Mattas*, 645 P.2d 254 (Colo.1982), we upheld against plain error challenge a first degree sexual assault instruction devoid of a culpable mental state element. First degree burglary, the only other crime charged, was defined to include the mental state of "specific intent." However, each crime was the subject of a set of three instructions con-

sisting of the elements instruction, followed immediately by a definition of terms, and then by a joint operation instruction. The joint operation instruction for first degree sexual assault included a definition of "intentionally." We concluded that the elemental instruction for first degree sexual assault was so closely linked to its companion joint operation instruction as to "adequately [apprise] the jury that it must find that the defendant possessed the requisite mental state for each charge." *Mattas*, 645 P.2d at 258. *See also People v. Frysig*, 628 P.2d 1004 (Colo.1981) (jury adequately instructed when proper culpable mental state linked to sexual assault through definition of one of the specified elements of the crime, even though missing from elemental instruction).

In contrast to *Hart* and *Mattas*, we overturned the defendant's conviction for second degree assault in *People v. Martinez*, 634 P.2d 26 (Colo.1981), where the defendant was convicted of that crime and of false imprisonment. Each involved the culpable mental state "knowingly," but whereas this element was included in the instruction defining false imprisonment it was not contained in the elemental instruction on second degree sexual assault. A single joint operation instruction was given.[9] There, lacking the linkage existing in *Mattas* and the basis for inference of the necessity of a culpable mental state found in *Hart*, we concluded that, taken as a whole, the instructions did not clearly inform the jury that "knowingly" was an essential element of second degree sexual assault. We have found other elemental instructions devoid of a culpable mental state to be fatally defective under this same test in various other factual contexts. *People v. Bridges*, 620 P.2d 1 (Colo.1980) (the only mental states defined in the joint operation instruction were impliedly limited in applicability to crimes other than engaging in a riot; the elemental instruction for that offense omitted mention of any culpa-

---

**9.** Although the opinion in *People v. Martinez* is not explicit, presumably the joint operation instruction defined "knowingly." *See* CJI—Crim.

6:1, referred to by the court to reflect the source of the joint operation instruction.

ble mental state); *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (Colo.1980) (conviction for first degree assault, second degree assault, attempted criminally negligent homicide, and crime of violence; first degree assault instruction omitted culpable mental state of "knowingly"; single joint operation instruction defined several mental states; instructions read together held insufficient as to first degree assault). *See also People v. Mascarenas*, 666 P.2d 101 (Colo.1983) (instruction implying culpable mental state only applicable to one element of aggravated robbery is defective).

■ Admittedly, evaluation of the adequacy of instructions, taken in totality, to advise a jury sufficiently of the elements of an offense where the culpable mental state has been omitted from an elemental instruction is not an exercise that can be conducted with the ease and certainty of a litmus test. Rather, all relevant factors, including the number of crimes charged, the positioning of the instructions, and the linkage among them, must be taken into the calculus in arriving at that judgment to assure that the jury has not convicted a defendant without finding each and every element of the crime proved beyond a reasonable doubt. *See In re Winship.* In the present case, for reasons previously explained, that assurance is lacking as to the second degree kidnapping instructions, so the conviction for that offense cannot survive plain error review.

## II.

The defendant also predicates error on the trial court's failure to submit to the jury a complete definition of the culpable mental state "knowingly." Instruction No. 14 stated that "[a] person acts 'knowingly' with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result." The statutory definition provides that:

A person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" ... with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

§ 18–1–501(6), 8 C.R.S. (1973). First degree sexual assault,[10] of which the defendant was convicted, requires that the proscribed act be committed "knowingly."[11]

■ Here again the defendant did not object at trial to the omission from the jury instruction of the "conduct" and "circumstance" components of the definition of the culpable mental state "knowingly." However, failure to instruct the jury adequately as to all elements of an offense is plain error, and we will review the alleged error here under that standard. *People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972).

■ The offense of first degree sexual assault requires that the actor have an awareness of his conduct and of the circumstance of the nonconsent of his victim. Thus, in the interest of complete precision the jury instruction should have included the conduct and circumstance components of the definition of "knowingly" as well as that of the result of conduct. However, the absence of the conduct and circumstance components rendered the instruction technically incomplete rather than fatally infirm.

In *People v. Derrera*, 667 P.2d 1363 (Colo.1983), we considered an analogous failure to instruct as to the conduct and circumstance components of the mental state "knowingly" as it applied to the offenses of attempted robbery and attempted second degree assault. We held there that:

In a case involving attempted robbery and attempted second degree sexual as-

---

**10.** § 18–3–402, 8 C.R.S. (1973).

**11.** The defendant was also convicted of second degree kidnapping, § 18–3–302, 8 C.R.S. (1973). We need not discuss the adequacy of the "know-

ingly" instruction as to that conviction, for we have concluded that it must be reversed for other reasons. *See* part I, *supra.*

sault, ... an instruction defining "knowingly" as an awareness by the defendant that his conduct is "practically certain to cause the result" would necessarily require the jury to be satisfied beyond a reasonable doubt that he also was aware that "his conduct is of such nature" and that "the circumstance exists" before he could be found guilty of these offenses. *Derrera*, 667 P.2d at 1368. Applying plain error review standards, we concluded in *Derrera* that the substantial rights of the defendant were not affected by the incomplete instructions. *See also People v. Clark*, 662 P.2d 1100 (Colo.App.1982) (awareness that conduct will achieve a result implies awareness of that conduct).

■■■ We reach the same result regarding the crime charged in this case. As noted, the offense of first degree sexual assault requires that the actor be aware of the circumstance of the victim's nonconsent. However, the technical deficiency resulting from failure to advise the jury specifically that the actor must be aware of the victim's nonconsent did not affect the defendant's substantial rights. The incomplete instruction merely directed the jury's attention to the resulting nonconsensual submission of the victim to sexual penetration rather than to the separate circumstance of nonconsent. To view nonconsensual submission as a component of result admittedly sacrifices some precision; however, in this case, as in *Derrera*, the jury could not reasonably have found that the defendant knowingly effected the results of his conduct without an awareness of the attendant conduct and circumstances.

We have recognized that "this distinction between an awareness of one's conduct or circumstance, on the one hand, and an awareness of the result of one's conduct, on the other, at times may be a subtle one ...." *People v. Noble*, 635 P.2d 203, 210 (Colo.1981). The uncontroverted testimony of the victim and the other witnesses, corroborated by physical evidence, constituted overwhelming proof of the defendant's guilt. Under these circumstances, this dis-

tinction is sufficiently subtle so that failure to delineate it clearly in the jury instructions is a technical insufficiency not rising to the level of plain error.

### III.

The defendant also contends that the trial court's refusal to suppress testimony based upon a report not disclosed prior to trial was reversible error. We disagree.

An employee of the Colorado Bureau of Investigation, Mool Verma, testified as an expert for the prosecution concerning tests performed on hair and fibers relevant to the case. Verma testified that a pubic hair recovered from the victim's underclothes could not have been the defendant's but very probably was his companion's, that a head hair found on the victim's shirt very probably originated with the defendant, and that a fiber recovered from the defendant's vehicle was consistent with those in a torn sheet found in his home.[12]

During Verma's testimony it developed that he had prepared a written report which had not been disclosed to the defense pursuant to discovery procedures. The defendant contends that the failure to furnish the report to the defense required the suppression of Verma's testimony.

The trial court conducted an *in camera* hearing and found that neither the Lakewood Police Department nor the district attorney's office had received a copy of the report prior to the time of Verma's testimony. It further found that defense counsel had earlier been apprised of the hair and fiber tests and could have secured the results independently. The trial court also made a finding that, although there had been no formal discovery motion made in the case, there had been a request for information for purposes of Crim.P. 16.

At the *in camera* hearing, defense counsel was furnished with a copy of the report and was afforded an opportunity to review it. Prior to such review, defense counsel stated to the court that "depending upon the development of testimony and evidence,

---

12. The victim was bound and blindfolded with strips of cloth torn from a sheet.

I may be requesting a considerable delay in the trial for the purpose of having independent examination." The trial judge responded that that issue would be considered following defense counsel's review of the report. After having examined the report, defense counsel renewed his motion to suppress Verma's testimony; however, he made no motion for a continuance, either then or after having heard the remainder of Verma's testimony.

 The prosecution is under a duty to disclose, upon request, specified matter in its possession of material importance to the charges against the defendant. Crim.P. 16; *People v. Thatcher*, 638 P.2d 760 (Colo.1981). This duty of disclosure extends to material in the possession or control of those reporting to the prosecutor, Crim.P. 16(I)(a)(4), and the prosecutor is required to maintain conditions adequate to obtain such material from various investigative personnel, Crim.P. 16(I)(b)(3).

 Notwithstanding the prosecution's broad discovery duty, the facts of this case do not warrant reversal. There is adequate support in the record for the trial court's findings that the report was not in the physical possession of the district attorney or the Lakewood Police Department,[13] that defense counsel had earlier been made aware of the hair and fiber tests, and that defense counsel could have obtained the results of these tests independently. These findings will not be disturbed on review. *See People v. Fish*, 660 P.2d 505 (Colo.1983); *People v. Walker*, 666 P.2d 113 (Colo.1983).

It is unnecessary to determine whether the district attorney's failure to procure the report violated his obligation to "ensure that a flow of information is maintained between the various investigative personnel and his office sufficient to place within his possession or control all material and information relevant to the accused and the offense charged." Crim.P. 16(I)(b)(3). The defendant has failed to indicate in what way the belated production of the report prejudiced his case. *See People v. Maestas*, 183 Colo. 378, 517 P.2d 461 (1973). Any claim now that prejudice resulted is convincingly belied by the defendant's failure to seek a continuance after indicating to the court the possibility of such a request "depending upon the development of testimony and evidence." Under these circumstances, the inference is inescapable that the delayed delivery of the report to the defendant did not prejudice his rights.

 Verma's testimony regarding physical evidence linking the defendant and his companion to the victim was largely cumulative of the victim's earlier testimony. It is within the trial court's discretion whether to impose a sanction for failure to make timely disclosure, and no abuse of discretion is apparent here. *See People v. Grubbs*, 39 Colo.App. 436, 570 P.2d 1299 (1977).

We reverse the defendant's conviction for second degree kidnapping, affirm his other convictions, and remand the case for further proceedings consistent with this opinion.

**13.** We do not mean to imply that the prosecutor's duty to disclose is limited to reports in the physical possession of the district attorney's office or the local law enforcement agency primarily responsible for the investigation of the case. Under Crim.P. 16(I)(a)(4), the prosecutor's duty of disclosure extends to material and information in the possession or control of all law enforcement agencies which "have participated in the investigation or evaluation of the case and [which] either regularly report, or with reference to the particular case have reported, to his office."