The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Victor R. KROVARZ, Defendant-Appellee.

No. 82SA563.

Supreme Court of Colorado, En Banc.

March 11, 1985.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., O. Otto Moore, Asst. Dist. Atty., David Conner, Donna Skinner Reed, Deputy Dist. Attys., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Gerald E. Piper, Rachel A. Bellis, Deputy State Public Defenders, Denver, for defendant-appellee.

DUBOFSKY, Justice.

The Denver District Court acquitted the defendant, Victor Krovarz, of attempted aggravated robbery, §§ 18–2–101(1), 18–4–301 and 18–4–302, 8 C.R.S. (1978). The court, relying upon *People v. Frysig*, 628 P.2d 1004 (Colo.1981), ruled that liability for criminal attempt is predicated upon the

specific intent to commit the underlying crime and found that the defendant did not possess the requisite intent. The People appeal the district court's ruling as a question of law under section 16–12–102, 8 C.R.S. (1978). We disapprove the ruling of the district court.

At approximately 11 a.m. on April 9, 1982, Sandra Tafoya was working as a cashier at a Target store on Sheridan Boulevard in Denver. The defendant came up behind Tafoya, put a putty knife to her throat, and demanded that she hand over the money in her cash register. Gary Hoskins, a customer waiting in the checkout line, circled behind the defendant and wrested the putty knife from his grasp. Hoskins pinned the defendant against a wall until store security guards assumed custody of the defendant. Shortly afterwards, Denver police officers arrived and arrested the defendant. The defendant was charged with attempted aggravated robbery under the second clause of section 18–4–302(1)(b),[1] which requires that the prosecution prove, in addition to the usual elements of robbery,[2] that the defendant "by the use of force, threats, or intimidation with a deadly weapon knowingly put[ ] the person robbed or any other person in reasonable fear of death or bodily injury ...."

At trial, the defendant's evidence focused on his mental state. A psychologist testified that the defendant had been a patient at the Bethesda Mental Health Center before his transfer to a halfway house in Denver, from which he was released the morning of the robbery. From his examination of the defendant, the psychologist concluded that the defendant was depressed and suicidal that morning, and, rather than intending to take money, the defendant had committed the robbery in the hope of being returned to a mental

---

**1.** Although the information simply charged the defendant with a violation of section 18–4–302, 8 C.R.S. (1978), the prosecutor stated at trial that she was seeking a conviction under the second clause of section 18–4–302(1)(b).

**2.** Under section 18–4–301(1), 8 C.R.S. (1978), "[a] person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery."

hospital where he could receive help. On cross-examination, however, the psychologist stated that the defendant did intend to engage in the conduct constituting the attempted robbery, was aware that he thereby placed the victim in reasonable fear of injury, and was aware that he was practically certain to obtain money as a result of his acts. The defendant confirmed the psychologist's testimony.

After hearing the evidence, the district court ruled that *Frysig* required a specific intent to commit the underlying crime before a defendant may be convicted of criminal attempt. The court found that the prosecution had failed to prove specific intent beyond a reasonable doubt and acquitted the defendant.[3] The court added that "if attempt were a knowing offense, my ruling would be different ...." The People on appeal contend that the culpable mental state for attempt is identical to the culpable mental state required for the underlying crime, and that the district court erred in requiring proof of specific intent to commit the underlying offense of aggravated robbery.

Criminal attempt is defined in section 18-2-101(1), 8 C.R.S. (1978):

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense ....

In *People v. Frysig*, 628 P.2d 1004 (Colo. 1981), we analyzed the history and language of the criminal attempt statute and concluded that the General Assembly intended to incorporate the traditional rule that an actor may be found guilty of attempt only if he intends to commit the underlying crime, *i.e.*, if he intends to perform the acts and bring about the results proscribed by statute. 628 P.2d at 1007–10. *See also People v. Derrera*, 667 P.2d 1363, 1367 (Colo.1983) ("Criminal attempt is a crime in which the defendant's purpose is to effect a criminal result."). In reaching this conclusion, we distinguished between the intent[4] necessary to establish a criminal attempt and the culpable mental state of the underlying crime:

[I]n order to be guilty of criminal attempt, the actor must act with the kind of culpability otherwise required for commission of the underlying offense, and must engage in the conduct which constitutes the substantial step with the further intent to perform acts which, if completed, would constitute the underlying offense.

*People v. Frysig*, 628 P.2d at 1010.[5]

In the present case, the district court implicitly found that the defendant pos-

---

**3.** Although the defendant's evidence focused on his lack of intent to take a thing of value (money), the district court did not isolate this or any other element in ruling that the defendant lacked specific intent to commit the charged crime. We therefore analyze the required mental state for attempt as it relates to all elements of aggravated robbery.

**4.** In this opinion, we use the terms "intent," "intention," "intentional" and "intentionally" interchangeably to refer to the culpable mental state defined in section 18-1-501(5), 8 C.R.S. (1978).

**5.** The People contend that any distinction between the intent required for attempt and the culpable mental state for the underlying crime is inconsistent with our statement in *People v. Aragon*, 653 P.2d 715, 720 (Colo.1982), that

"[c]riminal attempt to commit aggravated robbery requires that the offender act with the kind of culpability otherwise required for the commission of aggravated robbery and that he engage in conduct constituting a substantial step towards the commission of that offense." *Accord People v. Ledman*, 622 P.2d 534, 538 (Colo. 1981). In both *Aragon* and *Ledman*, however, we were confronted with issues that required us to identify the culpable mental state of the underlying crime only; in neither case were we called upon to discuss or decide the separate mental element that might attach to attempt. In *Aragon* we held that a completed act of aggravated robbery took place and that the defendant was not entitled to an attempt instruction. 653 P.2d at 720. In *Ledman* a defendant convicted of attempted aggravated robbery claimed that his due process rights were violated by a statutory scheme making impaired men-

sessed a culpable mental state of knowledge,[6] which would be sufficient to sustain a conviction for the underlying charge of aggravated robbery. §§ 18–4–301 and 18–4–302(1)(b). We must determine whether the mental state of knowledge also fulfills the culpable mental state for attempt identified in *Frysig*.

■ One may be guilty of attempt without having engaged in the harmful conduct or having achieved the harmful result that ordinarily forms the basis for criminal liability; rather, culpability for criminal attempt rests primarily upon the actor's purpose to cause harmful consequences. *People v. Frysig*, 628 P.2d at 1008; W. LaFave and A. Scott, Jr., *Handbook on Criminal Law* § 59 at 427 (1972) (LaFave and Scott); Enker, *Mens Rea and Criminal Attempt*, 1977 Am.Bar Found. Res.J. 845, 855–56 (Enker); 1 *Working Papers of the National Commission on Reform of Federal Criminal Laws* at 351 (1970) (Working Papers); *Model Penal Code* § 5.01 comment at 24 (Tent. Draft No. 10 1960). Punishment is justified where the actor intends harm because there exists a high likelihood that his "unspent" intent will flower into harmful conduct at any moment. Enker at 855. The probability of future dangerousness, however, is not confined to actors whose conscious purpose is to perform the proscribed acts or achieve the proscribed results, *i.e.*, those possessing the culpable mental state of specific intent. *See* § 18–1–501(5), 8 C.R.S. (1978).[7] We believe that this danger is equally present when one acts knowingly.

■ In analyzing the danger posed by a knowing attempt, we first recognize that the statutory definition of aggravated robbery includes elements of conduct, result and circumstance,[8] and that the definition of the culpable mental state of knowledge differs in relation to each type of element. We therefore examine the mental state of knowledge in relation to each type of element in order to see whether each contains the potential danger that justifies legislative imposition of attempt liability.

■ With respect to a result, one acts knowingly "when he is aware that his conduct is practically certain to cause the result." § 18–1–501(6). When one engages in conduct that is practically certain to cause a prohibited result, with awareness of the likely consequence, one in effect chooses to create that result even though he may not actively desire that it occur.[9]

tal condition a defense to specific intent crimes only; in analyzing this claim we focused solely upon the culpable mental state of the underlying crime in order to isolate the elements requiring a showing of less than specific intent. 622 P.2d at 538. Because we had no occasion in either case to discuss a separate mental element for attempt, our silence concerning the possibility of a separate mental element cannot be considered a reasoned disposition of the issue.

6. In this opinion, we use the terms "knowledge," "knowing" and "knowingly" interchangeably to refer to the culpable mental state defined in section 18–1–501(6), 8 C.R.S. (1978).

7. Section 18–1–501(5), 8 C.R.S. (1978), provides:

All offenses defined in this code in which the mental culpability requirement is expressed as "intentionally" or "with intent" are declared to be specific intent offenses. A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred.

8. Robbery requires a knowing mental state in relation to conduct (use of force, threats or intimidation), result (taking) and circumstance (thing of value from the person or presence of another). *People v. Derrera*, 667 P.2d 1363, 1368 (Colo.1983). Aggravated robbery under section 18–4–302(1)(b), as charged here, expands the conduct requirement by specifying that the actor must have used a deadly weapon, and expands the result requirement by specifying that the defendant's actions must place the victim in reasonable fear of death or injury.

9. Although we need not decide the question here, we note that this line of reasoning does not necessarily extend to crimes predicated upon a culpable mental state of recklessness. One who acts recklessly "consciously disregards a substantial and unjustifiable risk ...," § 18–1–501(8); such conscious disregard does not imply that one chooses the result in the same way that one chooses a result he knows to be a practical certainty. Thus, the Model Penal Code, while

In *Derrera*, we noted that the culpable mental state of knowledge relative to result "approaches the formulation of a specific intent requirement." 667 P.2d at 1368.[10] For this reason, a number of jurisdictions by statute have extended attempt liability to situations where the actor knowingly obtains the forbidden result. Ark. Stat.Ann. § 41–701(2) (1977); Hawaii Rev. Stat. § 705–500(2) (1976); Model Penal Code § 5.01(1)(b) (Proposed Official Draft 1962). The drafters of the Model Penal Code explained that this extension of liability is warranted because

> the manifestation of dangerousness is as great—or very nearly as great—as in the case of purposive conduct. In both instances a deliberate choice is made to bring about the consequence forbidden by the criminal laws, and the actor has done all within his power to cause this result to occur. The absence in one instance of any desire for the forbidden result is not, under these circumstances, a sufficient basis for differentiating between the two types of conduct involved.

*Id.* § 5.01 comment at 29–30. We agree with this reasoning; a knowing attempt to attain a proscribed result is a sufficient culpable mental state to justify imposition by the legislature of attempt liability.

■ We next turn to the question of whether a culpable mental state of knowledge relative to the other two types of elements, conduct and circumstances, is a sufficient index of dangerousness to warrant the punishment established by the legislature for criminal attempt. One acts knowingly with respect to statutorily defined conduct and circumstances "when he is aware that his conduct is of such nature or that such circumstance exists." § 18–1–501(6). Acts undertaken with such awareness are the product of deliberate choice. Indeed, the correlation here between knowledge and intention is even closer than it is with regard to result: knowledge with regard to result requires that the actor be "practically certain" of the consequences, while knowledge with regard to conduct and circumstances requires an "awareness" of the nature of the conduct and the presence of the circumstances. *See* Wesson, *Mens Rea and the Colorado Criminal Code*, 52 U.Colo.L.Rev. 167, 174–75

---

permitting attempt liability for results obtained knowingly, explicitly excludes results obtained recklessly. *Model Penal Code* § 5.01 comment at 30 (Tent. Draft No. 10 1960). In addition, every state court that has considered this question has declined to extend attempt liability to reckless crimes, on the ground that one cannot intend to commit a crime defined as having an unintended result. *People v. Van Broussard*, 76 Cal.App.3d 193, 197, 142 Cal.Rptr. 664, 666 (1977); *Commonwealth v. Hebert*, 373 Mass. 535, 368 N.E.2d 1204, 1206 (1977); *State v. Howard*, 405 A.2d 206, 212 (Me.1979); *State v. Zupetz*, 322 N.W.2d 730, 735–36 (Minn.1982); *People v. Brown*, 21 App.Div.2d 738, 249 N.Y. S.2d 922, 923 (1964); *Hull v. State*, 553 S.W.2d 90 (Tenn.Cr.App.1977); *State v. Melvin*, 49 Wis.2d 246, 181 N.W.2d 490, 492 (1970).

Although some of these cases speak of "specific intent" as a necessary predicate for attempt liability, *see, e.g., Van Broussard*, 76 Cal.App.3d at 197, 142 Cal.Rptr. at 665, their analysis is concerned solely with distinguishing intent from recklessness; the cases do not consider whether attempt liability may be based on knowledge, and therefore they are not contrary to the position we adopt today. This is illustrated by the approach of the Indiana Supreme Court. In *Smith v. State*, 422 N.E.2d 1179, 1185

(Ind.1981), the court held that there can be no attempt liability for voluntary manslaughter predicated upon recklessness, declaring that the Indiana attempt statute, identical to that of Colorado, applies exclusively to specific intent crimes. One year later, however, the same court acknowledged the existence of attempted voluntary manslaughter based upon "a knowing or intentional state of mind." *Goodwin v. State*, 439 N.E.2d 595, 599 (Ind.1982).

**10.** We emphasize that the distinction between intentionally and knowingly produced results, although sometimes subtle, remains viable and valuable in contexts other than the one here. The legislative intent to create such a distinction is clear. When the culpable mental state requirements of the Colorado Criminal Code were first adopted, the mental state of knowledge was defined relative to conduct and circumstance only. § 40–1–601(7), C.R.S. 1963 (1971 Perm. Cum.Supp.). On July 1, 1977, the General Assembly expanded the definition of knowledge to include an awareness of practically certain results. Ch. 224, sec. 2, § 18–1–501(6), 1977 Colo. Sess.Laws 959. This change indicated a considered legislative judgment that a distinction between knowingly and intentionally produced results was necessary. *See Derrera*, 667 P.2d at 1368 n. 6.

(1981). Given this awareness, there is no practical difference between knowledge and intention relative to conduct or circumstances. La Fave and Scott § 28 at 197 ("an intention to engage in certain conduct or to do so under certain circumstances may ... be said to exist on the basis of what one knows"); Feinberg, *Toward a New Approach to Culpability: Mens Rea and the Proposed Federal Criminal Code,* 18 Am.Crim.L.Rev. 123, 133 (1980) (both knowing and intentional conduct "involve a conscious undertaking to perform a physical act").

■ The structure of the Colorado Criminal Code supports our conclusion, so far as criminal attempt is concerned, that there is no practical difference between knowledge and intention relative to conduct or circumstances. The mental state of intention is defined relative to result but not relative to conduct or circumstances; knowledge is the most culpable state attached to either of these latter two types of elements. § 18–1–501(5), (6). This scheme indicates a legislative judgment that any definition of intent attaching to either conduct or circumstances is superfluous. At least with regard to conduct, this determination was deliberate. When the culpable mental state requirements of the Code were first adopted, the mental state of intention was defined to include the actor's conscious object of engaging in the proscribed conduct. § 40–1–601(6), C.R.S. 1963 (1971 Perm.Supp.). On July 1, 1977, this provision was deleted. Ch. 224, sec. 2, § 18–1–501(5), 1977 Colo.Sess.Laws 959; *see People v. Noble,* 635 P.2d 203, 210 n. 18 (Colo.1981). Based upon the structure and history of the statutory culpable mental state requirements, we conclude that knowledge as to conduct and circumstances is a sufficient index of potential harm to permit the imposition by the legislature of punishment for criminal attempt.

■ In addition, the attempt statute indicates a legislative intent to permit imposition of attempt liability based upon a culpable mental state of knowledge relative to circumstances. Section 18–2–101(1), 8 C.R.S. (1978) provides in part: "Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be ...." This provision permits belief in external circumstances, a mental state of lesser culpability than actual awareness, to establish attempt liability as to circumstances.[11]

■ We hold that a culpable mental state of knowledge suffices to support criminal attempt liability. We recognize that our conclusion that attempt liability may be based on knowing conduct or knowingly attained results conflicts with a plausible reading of *People v. Frysig,* 628 P.2d 1004 (Colo.1981) that knowledge cannot substitute for intent as a predicate for attempt liability. The precise issue in *Frysig* was whether, in a prosecution for attempted first-degree sexual assault, the trial court erred in failing to instruct the jury that the defendant could be found guilty of attempt only if he intended to commit the underlying crime. The culpable mental state relative to the conduct and result comprised within first-degree sexual assault was, and still is, knowledge. *Id.* at 1011; § 18–3–402, 8 C.R.S. (1978 and 1984 Supp.). We did not find, however, that the instruction regarding this mental state was an adequate substitute for an instruction on the intent required for attempt; rather, we held that the instruction regarding the

---

**11.** A number of commentators, arguing that the actor's mental state relative to circumstances is irrelevant to his potential dangerousness, have proposed that the culpable mental state attached to the circumstantial elements of the underlying crime should suffice to establish attempt culpability as to such elements. Enker, *Mens Rea and Criminal Attempt,* 1977 Am.Bar Found. Res.J. 845, 866; Smith, *Two Problems in Criminal Attempts,* 70 Harv.L.Rev. 422, 434–35 (1957); *Model Penal Code* § 5.01 comment at 27–28 (Tent. Draft No. 10 1960); *see Frysig,* 628 P.2d at 1008 n. 5. Because we need analyze here only the culpable mental state of knowledge relative to circumstances, we express no opinion on the propriety of basing attempt liability upon any lesser mental state.

"substantial step" necessary for attempt cured the error by referring to "purpose." *Frysig* therefore can be read to imply that knowledge could not substitute for intent as the culpable mental state of attempt. In holding as we do today, we reject such a reading of *Frysig*. The district court erred in requiring a showing of specific intent to commit the underlying crime.

Ruling disapproved.